(45 Misc. Rep. 155)

PETIT v. PETIT.

(Supreme Court, Special Term, Fulton County.   November, 1904.)

1. DIVORCE—MARRIAGE OF GUILTY PARTY.
    Code Civ. Proc. § 1761, forbidding the guilty party in divorce from marrying another during the life of the innocent party, does not affect the validity of his marriage to such other in another state.

2. SAME—JUDGMENT.
    Code Civ. Proc. § 1774, providing that no final judgment in divorce shall be entered in an action brought under the first or second articles of the title until after three months from the filing of the decision, the entry in an action for absolute divorce of such interlocutory judgment does not effect the dissolution of the marriage, but it remains unimpaired until the entry of the final judgment.

3. MARRIAGE—ANNULMENT.
    Though a marriage by a husband in another state after the entry of an interlocutory judgment of divorce and before the entry of the final judgment is invalid, it will not be annulled by the suit of either party to such second marriage, where they lived together for two years after the entry of the final judgment.

Action by Martha Petit, by James Noonan, her guardian, against Joel Petit, to annul a marriage.   Judgment for defendant.

Eugene D. Scribner; for plaintiff.

SPENCER, J.   In March, 1902, the defendant brought action for divorce against his wife, Ida.   They were both residents of this state. The said Ida counterclaimed, alleging that he was then living in meretricious relations with Martha, the present plaintiff.   Judgment was rendered in favor of the wife, and the decision of the court filed October 18, 1902, on which day an interlocutory judgment was entered. On the 25th—seven days later—the plaintiff and defendant went to the state of Vermont, and there intermarried, returning immediately to this state, where they resided together as husband and wife until July, 1904, when this action was brought to annul the marriage, the plaintiff claiming that at the time of her marriage to the defendant his marriage to Ida had not been dissolved, for the reason that the interlocutory judgment did not dissolve the marriage, and that the final judgment was entered without an order of the court, and at a date subsequent to her marriage to defendant.

I think the decisions in this state are conclusive that the provisions of our statute (Code Civ. Proc. § 1761) forbidding the guilty party in a divorce action from marrying another during the life of the innocent party are ineffectual to affect the validity of his marriage to such other, contracted in another state.   Van Voorhis v. Brintnall, 86 N. Y. 18, 40 Am. Rep. 505; Thorp v. Thorp, 90 N. Y. 602, 43 Am. Rep. 189; Kerrison v. Kerrison, 8 Abb. N. C. 444.   The question therefore arises whether the marriage between the defendant and Ida had been dissolved at the time of the defendant's marriage to the plaintiff.   The decision calls for a construction of section 1774 of the Code of Civil Procedure as to the force and effect of interlocutory judgments in divorce actions, and whether, under the provisions of that section, final judgment may in any case be entered in pursuance of the directions

contained in the interlocutory judgment, and without a separate application to the court therefor. The determination of these questions has importance beyond fixing the status of the parties pending the entry of the final judgment, inasmuch as it may also affect rights to property and determine the legitimacy of offspring.

1. The term "interlocutory judgment," as employed in section 1774 of the Code of Civil Procedure, is not restricted to its ordinary meaning. By the Code of Remedial Justice, § 1201, the term was strictly defined; but, owing to the confusion which ensued in respect to appeals from orders as distinguished from judgments (Throop's Notes to Code Civ. Proc. § 1200), the Legislature, in adopting the Code of Civil Procedure, omitted the definition (Code Civ. Proc. c. 11), thereby indicating that when employed in the Code the term should not be restricted by the definition. The use to which it is put in section 1774 forbids such restriction. The language of the amendment to that section in 1902 (page 951, c. 364) reads as follows:

"No final judgment annulling a marriage, or divorcing the parties and dissolving a marriage * * * shall be entered, in an action brought under either article first or article second of this title, until after the expiration of three months after the filing of the decision of the court or report of the referee. After the expiration of said period of three months final judgment shall be entered as of course upon said decision or report, unless for sufficient cause the court in the meantime shall have otherwise ordered. Upon filing the decision of the court or report of the referee, a judgment annulling a marriage or divorcing the parties and dissolving a marriage shall be interlocutory only and shall provide for the entry of final judgment granting such relief three months after the entry of interlocutory judgment unless otherwise ordered by the court."

Having regard to interlocutory judgments as theretofore employed, it would be presumed that such a judgment in a divorce action would adjudge as to annulment or divorce and leave only incidental and dependent questions, such as alimony, custody of children, and costs, to be determined by the final judgment. But such clearly may not be its office under the provisions quoted. Although somewhat inconsistent, their evident intention clearly is that no final judgment granting annulment or divorce shall be entered until after the expiration of three months from the entry of the interlocutory judgment; thus making necessary an interlocutory judgment in every case. Gibson v. Gibson, 40 Misc. Rep. 103, 81 N. Y. Supp. 343. I think it is also clear that these provisions prohibit the interlocutory judgment from granting the relief asked for, to wit, the annulment of the marriage or its dissolution, and that such relief may only be awarded in and by the final judgment. I therefore conclude that in construing these provisions (section 1774) the term "interlocutory judgment" must be regarded as referring to a form of judgment not heretofore within the meaning of the term.

2. If this be so, then the inquiry may well be made as to what office is filled by the interlocutory judgment in divorce actions. In answering this question we may seek enlightenment from other countries where statutes similar to our own have been in force. These may not serve to control, as the statutes and methods of procedure which there obtain differ from ours; but they will serve to throw light upon the intent of

our Legislature in the enactment of the statute under consideration. In England a decree nisi in divorce actions has long been employed, but simply as a cautionary measure, delaying the decree absolute for a specified period named in the decree nisi, so as to enable the public officers, or parties in interest, to show cause why the decree absolute should not be granted. The decree nisi does not dissolve the marriage. This is accomplished by the decree absolute, which takes effect from the time of its rendition and entry. Substantially the same practice has been accomplished in Massachusetts by divers changes in its statutes. Practice of a kindred nature is also found in Louisiana. From a cursory survey of what exists elsewhere and a careful consideration of our own statute, I am of the opinion that the interlocutory judgment employed in our statute was not intended to serve as an adjudication annulling or dissolving the marriage; but serving, as in the case of the English decree nisi, as a cautionary measure delaying the final judgment for a period of three months in order to enable a party in interest opportunity to show cause why final judgment should not be entered. Although the interlocutory judgment makes no adjudication, its office is to designate and set forth fully what the final judgment shall adjudge. The statute expressly provides that it "shall provide for the entry of final judgment granting such relief," thereby clearly intending that the interlocutory judgment shall specify the relief to be granted. Thus construed, the scheme of the amendments to this section becomes reasonably plain. Pending the entry of the final judgment, or, more properly, judgment absolute, there is no change in the status of the parties. The marriage is in no sense dissolved or annulled. The interlocutory judgment simply forecasts what the final judgment may be.

3. Considerable confusion exists as to whether the final judgment may be entered by the clerk in obedience to directions contained in the interlocutory judgment, or whether a subsequent application to the court for final judgment is necessary. A careful examination of the various sections of the Code having reference to this subject (sections 1021, 1022, 1228, 1229, 1230, 1231, 1236, and 1774) leads to the conclusion that the practice intended by section 1774 is that the final judgment in divorce actions shall be entered as of course. The language of the provision is as follows:

"After the expiration of said period of three months final judgment shall be entered as of course upon said decision or report, unless for sufficient cause the court in the meantime shall have otherwise ordered."

The expression "of course," as used in section 1229, has always been understood to refer to the manner of entering final judgments under the provisions of subdivisions 1 and 2 of section 1212; that is, the clerk enters final judgment upon the filing of requisite proof by affidavit of the default, etc. The terms "of course" and "as of course," as employed in sections 1229 and 1774, mean "without special direction or provision" (Web. Dict.), or pursuant to settled rule for which there need be no further direction or authority. As we have seen, the form of the final judgment as to substance must be set forth in the interlocutory judgment, and the court having in that judgment specified the nature of the relief which is to be granted, there is no occasion or necessity for it to give further directions. I find nothing in any of the

sections of the Code relating to this subject in conflict with this view of the statute, and the practice so indicated conforms to that which now obtains in respect to interlocutory judgments upon the trial of a demurrer. Section 1021; Liegeois v. McCrackan, 22 Hun, 69, 83 N. Y. 624; United States Ins. Co. v. Jordan, 21 Abb. N. C. 330.

In this connection it may be well to say that the mandatory provision which requires the interlocutory judgment to provide for the entry of final judgment seems to have application only to annulment or divorce. By the amendment of 1903 (page 1139, c. 488) the interlocutory judgment may also provide for alimony and costs in the discretion of the court. The object of this amendment was no doubt to permit the interlocutory judgment to provide for all the relief asked for, so as in all cases to avoid a subsequent application to the court; because, when relief is sought by the final judgment, not included in the interlocutory judgment, such additional relief could only be obtained upon application. Moreover, the interlocutory judgment may, by its terms, require application for final judgment to be made, and where such is the case final judgment may not be entered otherwise; but where the interlocutory judgment directs the clerk to enter the final judgment, and specifies just what that judgment shall contain, the clerk has authority to enter the appropriate judgment upon application of the party entitled thereto. The direction contained in the interlocutory judgment and the statute is the authority for its entry.

4. An examination of the judgment in the action between the defendant and his wife Ida discloses that it followed the practice as herein indicated, and that the final judgment entered by the clerk conforms strictly to the directions contained in the interlocutory judgment. The interlocutory judgment did not, by its terms, adjudicate as to the divorce, but simply contained directions as to what the final judgment should contain in that regard, unless the court in the meantime should make other directions. No other directions having been made, the final judgment was regularly entered by the clerk. I am therefore of the opinion that until the entry of the final judgment there was no adjudication dissolving the marriage between the defendant and his wife Ida, and that at the time of the defendant's marriage to the plaintiff his former marriage was still in force.

But in spite of these conclusions I am nevertheless of the opinion that the plaintiff is not entitled to the relief for which she asks. It is true the defendant's marriage with Ida was not dissolved at the time of the plaintiff's marriage, but it was dissolved within a few months, and she lived with the defendant as his wife for nearly two years thereafter. May she now ask the court to dissolve their relations? I think not. Though under age, the plaintiff was over the age of consent. Her cohabitation with the defendant thereafter, and after his marriage with Ida had been dissolved, should be regarded as confirming the contract of marriage. The same rule applies to the defendant. Neither should be heard to allege its invalidity. The court will not lend its assistance in adjudging their relations adulterous and their offspring illegitimate. Judgment may be entered denying the relief asked for on the ground that there is a valid and existing marriage between the parties to the action.

Judgment accordingly.