## In the Matter of Joseph C. Bancroft.

County Court, Chautauqua County, May 19, 1949.

*M. D. Lombardo* for Joseph C. Bancroft, respondent.

*Amos S. Basel,* in person, and *Warren W. Johnson* for Amos S. Basel, as guardian ad litem.

BODINE, J.   Respondent, the alleged father of an illegitimate child born November 1, 1948, challenges the validity of an application on behalf of the child through its guardian ad litem to set aside and declare null and void, so far as the rights of the child are concerned, an order of this court confirming, pursuant to section 121 of the Domestic Relations Law, a compromise

agreement between respondent and Dorris Furst, the child's mother, whereby for an allegedly inadequate consideration she released respondent of any and all claims "by reason of the birth of said child and the support, education and maintenance thereof." The application so challenged further prays that respondent be required to provide adequate support and an adjudication that respondent is the father of the child and for incidental relief. No contractual obligation on respondent's part is alleged.

The compromise agreement is attacked as conceived and consummated in fraud as to Mrs. Furst and its representations resulting in confirmation, alleged to be a fraud on the court. It is claimed under these allegations, which, for the purpose of passing on the motion to dismiss, we are to assume to be capable of substantiation, that the child, though not a party to the agreement, has the right through its guardian appointed for that purpose to intervene inasmuch as it is vitally interested in the subject matter.

That the courts have inherent power to set aside, correct or modify their orders and judgments where it appears they are tainted with fraud, excusable mistake, irregularity or inadvertence in their procurement cannot be questioned, and it has been held that this power may be invoked in the furtherance of justice and the prevention of injustice on the application of one who, although not a party to the proceeding, has what appears a sufficient reason for intervening. (*Manahan* v. *Petroleum Producing & Refining Co.,* 198 App. Div. 192; *Ladd* v. *Stevenson,* 112 N. Y. 325; *Matter of Lyons* v. *Goldstein,* 290 N. Y. 19, and cases cited.)

It also follows, it is plain, that the party who seeks to intervene must be one whose rights in the subject matter have a legally recognized status as distinguished from what might be termed a mere moral right and it is in this light that this decision must be made, for this child has only those rights, so far as its putative father is concerned, as are conferred by statute. An illegitimate child in absence of a contract had no rights enforcible against its father at common law for he was under no legal obligation to support it. The child's rights are gauged and controlled exclusively by the statute which, being derogatory of the common law, must be strictly and fully complied with. (*People ex rel. Lawton* v. *Snell,* 216 N. Y. 527; *Schneider* v. *Kennat,* 267 App. Div. 589, and cases therein referred to.) The statute, article VIII of the Domestic Relations Law, confers no

right on an illegitimate to engage its alleged father in filiation proceedings or incidentally for support or other relief. Such rights are conferred solely upon the mother or, in a proper case, upon the welfare authorities. (§ 122; *Wynder* v. *Daniels*, 72 N. Y. S. 2d 314.) The sole object of the paternity statute is to provide a means for determining who owes the duty of support and there is therefore no analogy between the statutory filiation procedure and its effect on the child's relationship and that class of cases, such as disputed divorce judgments and the like where legitimacy is the issue. and where the child is a proper party. An examination of the authorities cited by petitioner bears out this conclusion.

We must conclude therefore as flatly declared in *Wynder* v. *Daniels* (*supra*) that the only avenue, in the absence of an enforcible contractual obligation, for an illegitimate to obtain support from its father is the method provided by the statute. Here pursuant to a provision of the statute an order has resulted which the child now seeks to have declared void. The child was neither a necessary nor proper party to that proceeding and therefore, has no standing in law to question it. To hold on purely equitable or moral grounds that the order should be set aside would serve no useful purpose for it would confer no rights on the child that did not exist before, and recourse would still have to be had to the statute by the mother or welfare officials to obtain the desired relief. In such case the integrity of the order could there be put in issue and disposed of along with all other matters involved.

The argument that the court in deciding this motion is in any manner bound by the provision in the order appointing the guardian ad litem, authorizing or directing him to intervene in the proceeding and take all steps necessary for the protection of the infant and for establishing the paternity of respondent, is untenable. The mere entertainment of an ex parte application for authority or direction to pursue an alleged legal remedy is not, in our opinion, to be considered tantamount to a decision on the legality or merits of the proposed remedy.

The cross motion of respondent to dismiss the application is granted, without costs.