Bertram Harnett, J.
In 1937 the New York Legislature first permitted husbands and wives to ¡sue each other for injuries caused by the negligence of the other. But, for ¡fear that couples would defraud itheir insurance companies with sham accidents and injuries, ¡and with half-hearted defenses, the Legislature exempted liability carriers from indemnifying interspousial lawsuits unless they expressly chose to offer such coverage. (L. 1937, oh. 669; Insurance Law, § 167, .subd. 3.)
Here we have a man injured through the negligence of his wife on his way out the door of their marriage.
Dorothy and John Longworth were married ¡and living together in Franklin Square, New York. In February, 1969, Dorothy sued for divorce. In July they separated. Dorothy got full ownership of their home land John moved out.
On July 28, 1969, the Longworths appeared in a divorce hearing before the late Mr. Justice David Holman of this court. At the hearing’s close, Mir. Justice Holman called for a submission of a proposed judgment, but then he died without signing any papers.
However, on March 11, 1970, the Longworths appeared before Mr. Justice 'Charles R. Thom of this court for a new divorce hearing .stipulating that the minutes of Mr. Justice Holman’s hearing be regarded as 'the minutes of the new hearing. On April 28, 1970, Mr. Justice Thom granted the divorce.
In November, between Mr. Justice Holman’s hearing and the execution by Mr. Justice Thom ¡of his divorce decree, John slipped and injured himself while leaving his wife’s house. He sued her and won a $25,000 judgment. Dorothy had asked her insurance company, Great American, to defend and indemnify her, but they refused citing subdivision 3 of section 167 of the Insurance Law as their authority.
The judgment remains unsatisfied. John’s ' administratrix (John died in April, 1973), as judgment creditor, and Dorothy, as judgment debtor, now seek this declaratory judgment to have Great American indemnify Dorothy and pay John. Dorothy also wants 'the reasonable value of counsel .services provided in defending ¡the action against her by John and in pursuing this current action.
Subdivision 3 of section 167 of the Insurance Law provides: “ No policy or contract shall be deemed to insure against any liability of an insured because of death or of injuries to his or her spouse * * * unless express provision relating specifically thereto is included in the policy ’ ’.
*116 In the policy here, no specific provision for a spouse was included. Great American contends that the exemption was in effect until April, 1970 when the divorce judgment was entered. Therefore, it argues, its immunity existed on November 17, 1969, the date of the accident. Dorothy counters: (1) that she is entitled to an order entering her divorce judgment nunc pro tunc as of July 28, 1969 (the close of Mr. Justice Holman’s hearing) putting the accident beyond the reach of subdivision 3 of section 167 of the Insurance Law; and, (2) that subdivision 3 of section 167 of the Insurance Law does not apply to homeowners’ liability insurance policies.
The function of orders nunc pro tunc is to correct irregularities in procedure. “ When a ruling* has in fact been made but is improperly evidenced by a defective mandate, or by no mandate at all, an appropriate land suitable order o.r judgment which manifests the existence of a determination may subsequently be granted to take effect as of the date of such determination”. (Merrick v. Merrick, 266 N. Y. 120, 122.) But, such orders cannot roll back the calendar for all purposes: “ An order nunc pro tunc may not 'serve to record a fact, such as a divorce, as of a prior date when the fact did not then exist ”. (Mohrmann v. Kob, 291 N. Y. 181, 186; see, also, Cornell v. Cornell, 7 N Y 2d 164.)
Here, there was no divorce granted until Mr. Justice Thom signed the judgment in April, 1970 — after the accident. Mr. Justice Holman never granted a divorce. At most, he indicated an inclination to grant it when at the close of the hearings he said to the attorneys, ‘ ‘ 'Submit your findings and leave the matter of alimony blank, and 'submit your judgment, notice of settlement”. Even a more definite statement of the Judge’s intent would have been insufficient, for .until the judgment was actually signed, he could still require further proof or change his mind altogether. Mr. Justice Holman himself indicated that he would not be acting immediately. ‘ ‘ 'Chances are I won’t render a decision on this for awhile. ’ ’ That the Holman hearing had no legal effect on the Longworth’s marriage is underscored by the fact that a hearing* de novo was conducted on March 11,1970 by Mr. Justice Thom before he signed the decree.
Accordingly, there was no divorce before April 28, 1970 and the court is without power to 'change that fact. The relief requested in the complaint depending* on the entry of a divorce judgment nunc pro tunc is denied.
But, the wife also argues that subdivision 3 of section 167 of the Insurance Law by the intent of the Legislature and by its *117 judicial application gives insurance companies protection from interspousal suits only with regard to an automobile liability policy, and not a homeowner’s liability policy as is the ease here.
The predecessor of subdivision 3 of section 167 of the Insurance Law arose as part of a legislative package. That package contained four substantive sections. The first permitted husbands and wives to sue each other for tortious injuries. The second set forth what is now subdivision 3 of section 167 of the Insurance Law. The third and fourth amended existing statutes mandating auto liability insurance, to exclude interspousal liability. On their face, only the third and fourth sections are limited to auto accident 'situations, and that is because of the statutes they specifically amend. To claim that the second section is somehow limited to auto liability cases is to imply that the first is as well. It is to say that the Legislature was only concerned with automobile liability when they approved this package, so that interspousal immunity is abolished only in auto cases. This would mean a wife could not sue a husband for nonauto liability. However, the plain wording of the statute defeats the contention.
Beading all of section 167 of the Insurance- Law indicates the propriety of a broader construction than plaintiff suggests. This section provides standard provisions for all liability insurance policies. When the drafters wished to limit the scope of a provision to automobile liability policies as in subdivisions 2 and 2-a, they were perfectly capable of saying so.
Apparently, most of the discussion at the time the law was passed, and the judicial discussion since, has centered around automobile liability. But, this indicates only the preponderance of automobile accident cases in our civil courts and the relatively recent accession to prominence of other forms of liability insurance such as the homeowner’s policy in question here.
Automobile liability may be a principal concern of subdivision 3 of section 167 of the Insurance Law, but it is certainly not the only concern. Indeed the possibility of collusive interspousal conduct is much greater in the privacy of the home as compared with the greater public exposure of an auto accident.
Accordingly, the court finds that John and Dorothy Longwor.th were married on November 17, 1969 when John was injured, and that as a result of subdivision 3 of section 167 of the Insurance Law, Great American Insurance Company is not liable to pay for the cost of Dorothy’s defense against John or to indemnify her for the loss. *118 The effects of 'subdivision 3 of section 167 of the Insurance Law may be outdated, unfortunate, and anomalous, especially in light of Gelbman v. Gelbman (23 N Y 2d 434), permitting tort actions between parents and children because of1 the recognition that liability insurance company would generally bear the burden, but we are bound by the law as written, and it is for the Legislature to make any change. (Badigian v. Badigian, 9 NY 2d 472.)